# UNITED STATES DISTRICT COURT

for the
Western District of Arkansas
Harrison Division

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| Premises located at 391 County Road 906, Green Forest, Arkansas 72638 | ) ) ) ) ) | Case No.  3:23-cm-00010-CDC |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: **Premises located at 391 County Road 906, Green Forest, Arkansas 72638, more particularly described on Attachment A,**

located in the _____Western_____ District of _____Arkansas_____ , there is now concealed *(identify the person or describe the property to be seized)*: **See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| **Title 18 U.S.C. § 2252A(a)(2)(B)** | **Receipt or Distribution of Child Pornography** |
| **Title 18 U.S.C. § 2252A(a)(5)(B)** | **Possession of Child Pornography** |

The application is based on these facts:

☑ Continued on the attached sheet. **Affidavit of HSI Task Force Officer Josh Jackson**

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Josh Jackson, HSI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  June 1, 2023

_____
*Judge's signature*

City and state:  Fayetteville, Arkansas

Christy D. Comstock, United States Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**Description of Property To Be Searched**

Any and all structures to include vehicles located on the property and curtilage of **391 County Road 906 in Green Forest, Arkansas 72638**, the **SUBJECT PREMISES**. **SUBJECT PREMISES** is more particularly described as a two-story house building constructed of tan stucco and a green metal roof.  The front of the house has a main entrance which faces west into the front yard towards County Road 906. To the south of the residence is a white building with a white front door that also faces County Road 906. There are multiple structures of unknown occupancy and/or structural integrity on the property, which are included in the authorization for search warrant.







## ATTACHMENT B

## Items To Be Searched For and Seized

a.      Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including, but not limited to:

  i.      Any computer, cellular phone, computer system, smart phones, computer tablets, and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, web cams, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to cellular telephones, hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography, or information pertaining to an interest in child pornography;

  ii.     Books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

  iii.    Originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

  iv.     Motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

b.      Contact information or correspondence (online conversations/ Chats) pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, and/or the sexual solicitation of minors that were transmitted or received using a computer, or some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

  i.      Electronic mail, internet chat logs, and electronic messages, social media messages, internet posts, blogs or any other internet-based contacts or communications, log in information to child exploitation forums, websites, and chatrooms;

ii. Envelopes, letters, books, ledgers, diaries, notebooks, notes, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or the solicitation of sexual conduct;

c. Peer-to-Peer software programs, including but not limited to eDonkey, BitTorrent and Gnutella.

d. Emails, log in information, credit card information, etc showing ownership or use of the premises or device, subscriptions to internet or phone services, or account information and subscriptions to online applications known for child exploitation, paid sites, and social media;

e. Records or other items which evidence ownership or use of computer equipment found in the above residence, including, but not limited to, sales receipts, bills for Internet access, and handwritten notes.

f. Any and all computer hardware, to include data-processing devices containing central processing units, such as "desktop", "tower", "laptop" and "notebook" computers, hand-held electronic organizers, "personal digital assistants" and iPod's/iRiver's; "routers", "switchers" "Cellular Phones/Smart Phones" "Tablets" or any similar device which facilitates communication by sending transmissions to intended recipients and has the capability of creating logs; internal and external storage devices, including magnetic storage devices such as hard disk drives, diskette drives, and tape drives, optical storage devices such as CD-ROM drives, CD-R/CD-RW recorders, and DVD drives/recorders, and other memory storage devices such as smart-card readers. In addition, peripherals, equipment that send data to, or receive data from, computer hardware, but do not normally store user data, such as keyboards, mice, printers, scanners, plotters, video display monitors, modems, cables, and certain types of facsimile machines.

g. Any and all computer software and storage media to include any material capable of storing information in a manner that can be used by computer hardware to save and/or retrieve information, such as diskettes, CD-ROM's, CD-R's, CD-RW's, DVD's, DVD-R's, DVD-RW's, magnetic tapes, ZIP disks, JAZ disks, Peerless disks, SparQ disks, ORB disks, optical disks, smart-cards, EPROMS, and digital memory media such as CompactFlash, SmartMedia, Sony Memory Sticks, and USB "thumb" or "key" drives, in addition to computer photographs, Graphic Interchange formats and/or photographs, cameras, digital cameras, slides, scanners or other visual depictions of such Graphic Interchange format equipment which may be, or are used to visually depict child pornography, child erotica, information pertaining to the sexual interest in children, sexual activity with children, or the distribution, possession or receipt of child pornography, child erotica or information pertaining to an interest in child pornography or child erotica.

h. Any and all computer-related documentation to include written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items. In addition to passwords, to include alphanumeric

2

strings, pass-phrases, password files, and similar decryption codes necessary to access data that is encrypted or otherwise inaccessible. Any and all security devices, to include physical keys, encryption devices, "dongles", and similar physical items needed to gain access to associated computer hardware.

i.      Any and all address books, mailing lists, lists of names and addresses of minors, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States Mails or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256 or minor contacted for sexual purposes.

j.      Any data that is encrypted and unreadable will not be returned unless law Enforcement personnel have determined that the data is not (1) an instrumentality of the offense, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offense specified above.

k.      In searching the data, the computer personnel may examine and copy all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized.  In addition, the computer personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized. Finally, the computer forensic personnel may access any and all applications, email accounts, social media, internet search terms and history, and/or documents contained upon any said device to determine relevancy.

l.      Any clothing or bedding consistent with the clothing or bedding contained in the images or videos recovered from the Snapchat account related to juniorperez329 as set out in the Affidavit.

**<u>Affidavit in Support of Application for Search Warrant</u>**

I, Task Force Officer Josh Jackson, being duly sworn, depose and state as follows:

1.     I am presently a Task Force Officer ("TFO") with the Department of Homeland Security, Homeland Security Investigations ("HSI") in Fayetteville, Arkansas. I have been a TFO since August 28, 2019. I am also currently employed by the Eureka Springs Police Department (ESPD) since January 16, 2018, and assigned as a Detective with the ESPD since October 1, 2018. I was previously employed with the Fayetteville Arkansas Police Department from December 2013 through January 2018 as a patrol officer.  As a detective and TFO, I investigate criminal violations relating to child exploitation and child pornography including violations involving the illegal production, distribution, online enticement, transportation, receipt and possession of child pornography, as statutorily defined in Title 18, United States Code, Sections 2251, 2251A, 2422(b), 2252 and 2252A.  I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in Title 18, United States Code, Section 2256) in all forms of media including computer media. I have also participated in the execution of numerous search warrants and arrest warrants, many of which involved child exploitation and/or child pornography offenses. This Affidavit is being submitted based on information from my own investigative efforts as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

2.     This Affidavit is being submitted in support of an application for a search warrant for the premises located at **391 County Road 906 in Green Forest, Arkansas 72638** the **"SUBJECT PREMISES"**.  As such, it does not include all of the information known to me as

part of this investigation, but only information sufficient to establish probable cause for the requested search warrant.

## **Statutory Authority**

3.      This investigation concerns alleged violations of Title 18, United States Code, Sections 2252A(a)(2)(B), Receipt of Child Pornography and Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography.

a)  18 U.S.C. 2252A(a)(2)(B) prohibits a person from knowingly receiving or distributing any material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

b)  18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing  or knowingly accessing with intent to view, any book, magazine, periodical, film, video-tape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

c)  The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

d)  The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c)

masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

e) The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

f) The term "computer," as defined in 18 U.S.C. § 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

g) The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (a) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (b) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (c) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

**Computers and Child Pornography**

4.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the **SUBJECT PREMISES**, in whatever form they are found.  One form in which the records might be found is data stored on a computer's hard drive or

other storage media.  Thus, the warrant applied for would authorize the search and seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

5.      *Probable cause.*  I submit that if a computer or storage medium is found on the **SUBJECT PREMISES**, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a) Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b) Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c) Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging

files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d)  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e)  The Internet allows users, while still maintaining anonymity, to easily locate other individuals with similar interests in child pornography; and websites that offer images of child pornography.  Those who seek to obtain images or videos of child pornography can use standard Internet connections, such as those provided by business, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired.  All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions involving those who wish to gain access to child pornography over the Internet.  Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" of the websites and images accessed by the recipient.

f)  It should be noted that Internet Protocol (IP) numbers are unique identifiers leased to internet customers by their ISP's.  Although IP numbers are capable of changing over time, it is common for only one (1) unique IP number to be assigned to a given customer's computer at any given time. However, some IP numbers such as a Natting IP address can share multiple users at the same time but a specific utilized telephone number can further

identify them.   Logs of these leased IP's (and their assigned customer accounts) are stored by ISP's routinely.

g) Your Affiant knows from his own experience and the training and experience of other law enforcement officers that Internet computers identify each other by an IP address.  These IP addresses can assist law enforcement in finding a particular computer on the Internet. These IP addresses can typically lead the law enforcement officer to a particular Internet service company and that company can typically identify the account that uses the address to access the Internet.

6. *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium located at the **SUBJECT PREMISES** because:

a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record

6

information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b) As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner.  Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used.  For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet.  Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.

For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c) A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d) The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how

a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e) Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

**Background Regarding Snapchat Accounts**

7. Snapchat is a multimedia messaging application developed by Snapchat, Inc. Snapchat's principal features include pictures and messages are usually only available for a short time before they are rendered inaccessible to their recipients. The following provides more salient information on Snapchat and its use by account holders.

a) Snapchat is primarily used for creating multimedia messages referred to as "snaps". "Snaps" can consist of a photo or a short video, and can be edited to include filters and effects, text captions, and drawings. "Snaps" can be directed privately to selected contacts, or to a semi-public "Story" or a public "Story" called "Our Story".

b) Private message photo "snaps" can be viewed for a user-specific length of time (1 to 10 seconds as determined by the sender) before they become inaccessible.

c) In May 2014, Snapchat added the ability to communicate via video chat with other users, as well as including a Direct Messaging feature to send text messages to other profiles.

d) The Snapchat application has evolved from originally focusing on person-to-person photo sharing to presently featuring users' "Stories" of 24 hours of chronological content, along with "Discover", letting brands show ad-supported short-form content.

e) Snapchat users can find or access friends via usernames and phone contacts, using customizable "Snapcodes", or through the "Add Nearby" function, which scans for users near their location who are also in the "Add Nearby" menu.

f) Snapchat has become notoriously known to be popular among the younger generations, particularly those below the age of 16, leading to many privacy concerns for parents.

g) As of March 2020, Snapchat had approximately 229 million daily active users. On average, more than 4 billion "Snaps" are sent each day.

### Summary of Investigation to Date

8. On February 28, 2023, TFO Jackson received Cyber Tip Line Report Number 141721122 from the National Center for Missing and Exploited Children (NCMEC) in reference to media files containing suspected child pornography that had been uploaded onto Snapchat's infrastructure.

9. The Cyber Tip Line Report reflected that the electronic service provider had viewed the image and further provided the following information:

Incident Type: Child Pornography (possession, manufacture, and distribution)

Screen/Username: juniorperez329

IP Address: 72.204.113.120

Number of Uploaded Files: 1

Date and time of incident 12-19-2022, 09:06:58 UTC

10. Snapchat categorized the uploaded image as "Apparent Child Pornography." An internet search on the origins of IP address 72.204.113.120 revealed it to be issued to the internet service provider Cox Communications. Pursuant to an administrative subpoena, on March 14,

2023, Cox Communications identified IP address 72.204.113.120 as being assigned to Judith Seith of 391 County Road 906, Green Forest, Arkansas 72638, through account number 6124435-12.

11.     Your Affiant conducted an open-source property record search of this address and determined it to be owned by Tabatha McEnaney. An email, mcenaneytabatha@gmail.com is the preferred email associated with the IP address provided by Snapchat. Your Affiant has also conducted surveillance on the residence and observed multiple vehicles. One of the vehicles observed at the residence was registered to McEnaney. A second open-source search on Tabatha McEnaney showed she is also known as Tabatha Perez.  Your Affiant also observed a vehicle in on the premises that was attached to Shawn Partee, who was previously convicted of Sexual Solicitation of a Child.

12.     Your Affiant viewed the file linked to the Cyber Tip Line Report 141721122 and determined that it meets the federal definition of child pornography. The file is described as follows:

> a)     File Name: **juniorperez329-None-fa835cbc-9b0f-52b2-bf7a-a808e28a6645~63- 53545bf279.mp4**

> b)     This 25 second video depicts what is believed to be a ten (10) to twelve (12) year-old pubescent female. The female is lying on the bed with her legs bent, masturbating, with the focus of the camera on her vagina.

13.     On May 10, 2023, pursuant to the ongoing child exploitation investigation, a federal search warrant to Snapchat was sought and obtained (3:23cm00006-CDC). On May 24, 2023, your Affiant received results from Snapchat regarding username **juniorperez329**. As part of the response, Snapchat provided your Affiant with four (4) additional videos and five (5) additional images. Your Affiant determined the files contain child pornography and are described below.

Videos (a) and (b) and images (e) and (f) appear to be of the same minor based on the clothing and bedding.  Your Affiant viewed and described the files as follows:

(a)    **File Name**: **chat~media_v4~2022-12-19-09-03-05UTC~juniorperez329~tonyperez_perez~saved**
This video is approximately 0.02 seconds in length and depicts an erect penis over a minor's bare butt. The minor appears to be lying face down on the bed with the pants removed.

(b)    **File Name: chat~media_v4~2022-12-19-09-03-19UTC~juniorperez329~tonyperez_perez~saved**
This video is approximately 0:07 seconds in length and depicts a male masturbating an erect penis while standing over a naked minor's butt. The minor appears to be lying face down on the bed with the pants removed.

(c)    **File Name: chat~media_v4~2022-12-19-09-03-24UTC~juniorperez329~tonyperez_perez~saved**
This video is approximately 0:04 seconds in length and depicts an erect penis being masturbated by a young minor's hand.

(d)    **File Name: chat~media_v4~2022-12-19-09-03-49UTC~juniorperez329~tonyperez_perez~saved**
This video is approximately 0:06 seconds in length and depicts a believed approximate twelve (12) to fourteen (14) year old minor female who has her legs and arms spread out wide and is balancing on the lap of an adult female that is rubbing up and down on her vagina.

(e)    **File Name: chat~media_v4~2022-12-19-09-02-56UTC~juniorperez329~tonyperez_perez~saved**
This image depicts an erect penis lying on a minor's bare butt on the crack of the butt.

(f)    **File Name: chat~media_v4~2022-12-19-09-03-11UTC~juniorperez329~tonyperez_perez~saved**
This image depicts an erect penis pressing into the butt of a minor with pants on.

(g)    **File Name: chat~media_v4~2022-12-19-09-05-44UTC~juniorperez329~tonyperez_perez~saved**
This image depicts a believed approximate ten (10) to twelve (12) year old minor female with an erect penis inserted into her mouth while she is looking up at the camera. The words "info" and "not preview" are also on the photograph.

(h)    **File Name: chat~media_v4~2022-12-19-09-05-49UTC~juniorperez329~tonyperez_perez~saved**
This image depicts a believed approximate ten (10) to twelve (12) year old different minor female with a semi-erect penis on each side of her face. The minor female has her mouth

open with semen dripping out of her mouth while she is on her knees looking at the camera. The words "info" "price" "dropbox cp" and "Not preview" are also on the photograph.

(i)      **File Name**: **chat~media_v4~2022-12-19-09-05-54UTC~juniorperez329~tonyperez_perez~saved**
This image depicts a believed approximate ten (10) to twelve (12) year old different minor female with an erect penis inserted into her mouth while she looks at the camera. The words "info" and "New cp" are also on the photograph.

14.    While reviewing Tabatha McEnaney's Facebook pictures, your Affiant discovered multiple photographs in a hospital dated November 22, 2022.  Depicted in the photographs was an adult male who appears to be of Hispanic decent and an infant. The Hispanic male is wearing a black DeWalt hooded sweatshirt. On May 15, 2023, Tabatha McEnaney posted a photograph on her Facebook page with the same Hispanic male holding the same infant. The male was wearing a DeWalt hooded sweatshirt and a Bowser's Metal Supply[1] hat. Your Affiant drove by the **SUBJECT PREMISES** on March 19, 2023, and photographed the residence. While returning the opposite way, your Affiant observed the same Hispanic male standing outside of the **SUBJECT PREMISES** near a white Ram 2500 pickup truck bearing Arkansas license plate ACK94B.  A review of vehicle registration information revealed that the Ram was registered to Tabatha McEnaney.

15.    On May 29, 2023, Green Forest Police Department conducted surveillance of the **SUBJECT PREMISES**.  While observing the **SUBJECT PREMISES**, Detective A. Lemus observed the Ram 2500 depart from the **SUBJECT PREMISES**.  Detective Lemus followed the Ram 2500 and, after observing the driver commit a traffic infraction, initiated a vehicle stop. Tabatha McEnaney was identified as the driver, and she had two children with her, identified as XXX McEnaney and an infant male (unidentified).

---

[1] Bowser's Metal Supply, LLC is a Harrison, Arkansas-based roofing and supplies company.  *See* bowsersmetalsupply.com

16.      In April 2023, your Affiant received a Criminal Intelligence Information Return from the Regional Organized Crime Information Center (ROCIC) regarding a social media search on username juniorperez329, Junior Perez and Tabatha McEnaney. The return produced a Facebook page for both Tabatha McEnaney and a user displaying the name Junior Perez. After reviewing both profiles, your Affiant discovered that both of their profile pictures feature three children side-by-side, two boys and one girl and appear to be the same children in both pictures. Additionally, the Junior Perez account features a partial picture of a Hispanic man's face and an infant.  The man is wearing a hat with the Bowser's Metal Supply logo.  Your Affiant further observed Facebook posts that indicate McEnaney and Perez had a new baby on May 15, 2022, and that McEnaney created a Go Fund Me page for the infant on his behalf for medical issues, which is consistent with pictures she posted of the infant in the hospital.

17.      Furthermore, your Affiant gathered the identity of three minors registered to the **SUBJECT PREMISES** that formerly attended the Green Forest Arkansas public school. They are XXX McEnaney (Male, born in 2008), XXX Perez (Male born in 2010), and XXX McEnaney (female, born in 2012).

18.      Finally, your Affiant drove by the **SUBJECT PREMISES** on the evening of May 31, 2023, and observed the same Hispanic male he observed on March 19, 2023, doing yardwork in the front yard with the white Dodge pickup in the front driveway. On the morning of June 1, 2023, your Affiant confirmed the white Dodge pickup was still parked in the front driveway.

<u>Conclusion</u>

19.      *Necessity of On-site and Off-site examinations of entire computers or storage media.* Based on my experience and the training and experience of other agents, many of the items sought in this affidavit may be stored electronically.  Based on my experience and consultation

with computer forensic experts, I know that electronic files can be easily moved from computer or electronic storage medium to another computer or medium. Therefore, electronic files downloaded to or created on one computer can be copied on or transferred to any other computer or storage medium at the same location. In addition, based on my experience, I know, that while on-site examinations might provide basic evidence of the alleged crime, the execution of most warrants involving computerized information requires special agents to seize a portion or all of a computer system's central processing unit (CPU), input/output peripheral devices, related software, documentation, and data security devices, including passwords, so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment.  This is true because of the following:

(a) Volume of evidence and time required for examination:  Computer storage devices such as hard disks, diskettes, tapes and laser disks, can store the equivalent of thousands of pages of information.  This sorting process can take up to several months to complete, depending on the volume of data stored. Therefore, in most cases, reviewing that information for items described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt solely via an on-site examination.

(b) Technical requirements:  Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a variety of forensic tools.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased,

compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional destruction (both from external sources and from destructive code embedded in the system such as a "booby trap"), a controlled environment, in most instances, is essential to a complete analysis.

20.     Therefore, authorization is sought in this application to seize, image, or otherwise copy any and all digital media as set forth in attachment "B" that is found on the premises to be searched, in order to examine those items for evidence. Furthermore, authorization is sought herein to conduct both on-site and subsequent off-site examinations of the electronic evidence as authorized by Rule 41(e)(2) of the Federal Rules of Criminal Procedure. If it is determined that data has been seized that does not constitute evidence of the crimes detailed herein, the government will return said data within a reasonable time.

21.     Based on my experience and the training and experience of other agents involved with this investigation, your affiant knows that individuals involved in the sexual exploitation of children through child pornography almost always keep copies of their sexually explicit material. Among the reasons copies are maintained is because child pornography is illegal to openly purchase or obtain, and the most common method of acquiring it is by trading with other people with similar interests.  It is also known that due to the inherent illegality of these sexually explicit materials, they are most often kept in a place considered secure, usually a residence, to avoid detection by law enforcement. Because several people can share the **SUBJECT PREMISES** as a residence, it is possible that the **SUBJECT PREMISES** will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that it is possible that the things described in this warrant could be found

on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

22.      Based on the foregoing information, probable cause exists to believe there is located at 391 County Road 906 in Green Forest, Arkansas 72638, the **SUBJECT PREMISES**, evidence of violations of Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography and Title 18, United States Code, Section 2252A(a)(2), Receipt of Child Pornography.   Your Affiant prays upon his honorable court to issue a search warrant for the **SUBJECT PREMISES** as further described in Attachment "A" for the items set forth in attachment "B", which is attached hereto and incorporated herein by reference, that constitute evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography and Title 18, United States Code, Section 2252A(a)(2), Receipt of Child Pornography.

Josh Jackson, Task Force Officer
Homeland Security Investigations

Affidavit subscribed and sworn to before me this ____1st____ day of ___June___ 2023.



Honorable Christy Comstock
United States Magistrate Judge

17